IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JESSE NARCISSE,<br><br>  Plaintiff,<br><br>vs.<br><br>JOHN REYNOLDS, and SPENCE PROPEL,<br><br>  Defendants. | 8:19-CV-130<br><br>**MEMORANDUM AND ORDER** |

## I.   INTRODUCTION

Jesse Narcisse, who is civilly confined at Norfolk Regional Center, has sued John Reynolds and Spence Propel in their individual capacities for impeding his access to the courts in violation of the 14th Amendment. Before the Court is Defendants' Motion for Summary Judgment. Filing 86. For the reasons stated herein, the Court grants Defendants' Motion.

## II.   BACKGROUND

In May of 2018, Narcisse was released from Tecumseh State Correctional Institution after serving his sentence for first-degree sexual assault and false imprisonment. Filing 70-1 at 18–19, 21. Upon his release, Narcisse attended a hearing before the Mental Health Board for the Third Judicial District to determine if he was a dangerous sex offender. Filing 70-1 at 22, 26–27. At this hearing, Kristi Egger, a public defender, represented Narcisse. Filing 70-1 at 27, 107. Egger had also represented Narcisse in a previous proceeding. Filing 70-1 at 45. Ultimately, the Mental

1

Health Board found "clear and convincing evidence" that Narcisse was a dangerous sex offender and placed Narcisse in "inpatient commitment" with the Nebraska Department of Health and Human Services ("NDHHS"). Filing 70-1 at 221–22. NDHHS then transferred Narcisse to Norfolk Regional Center ("NRC"). Filing 70-1 at 17–18.

While Narcisse was confined at NRC, Melanie Whittamore-Mantzios, who the Court previously dismissed as a defendant in this suit in its November 19, 2021 Order, Filing 85, was working as a private attorney at a law firm in Lincoln, Nebraska. Filing 70-2 at 1. At the time, her law firm had a contract with NDHHS to provide legal counsel and research for individuals at NRC. Filing 70-2 at 1–2, 5–15. On September 2, 2018, Narcisse sent Whittamore-Mantzios a letter at her office. Filing 70-1 at 36–37. The letter made various complaints about Egger's performance during his hearing before the Mental Health Board and stated that he did not want Egger to represent him. Filing 70-1 at 200. He further wrote that he "would like for [Whittamore-Mantzios's] law firm to represent [him] at [his] Mental Health [Board] hearing."[1] Filing 70-1 at 200. Included with the letter were a list of cases Narcisse believed would help him. Filing 70-1 at 201. After receiving the letter, Whittamore-Mantzios sent a letter back stating that she was "not able to help [Narcisse] at this time" and told him that if he was seeking her legal assistance, he needed to contact his social worker and that his social worker would act on his request if appropriate. Filing 70-1 at 205.

Later, Narcisse sent a second letter to Whittamore-Mantzios on February 8, 2019. Filing 70-1 at 37, 52. Before receiving Whittamore-Mantzios's response, Narcisse filed a grievance against NRC on January 21, 2019, for failing to provide him with an adequate law library and for not stocking the law library with up-to-date books. Filing 70-1 at 153. A nonparty staffer at NRC

---

[1] Narcisse now claims that he did not want Whittamore-Mantzios to represent him, and instead wanted caselaw research. Filing 70-1 at 39.

responded that NRC provided a law library and that if Narcisse needed additional caselaw he could speak with his social worker to help get into contact with a contract attorney. Filing 70-1 at 153.

On February 13, 2019, Narcisse spoke to defendant Spencer Propel about his displeasure with NRC's law library. Filing 70-1 at 88–89. Propel responded that Narcisse did not need a law library and directed him to "go through legal assistance." Filing 70-1 at 89. That same day, Narcisse sent a grievance to defendant John Reynolds reiterating his concerns about NRC's law library. Filing 70-1 at 152, 182. A nonparty NRC staffer responded to the grievance, stating that NRC was not required to furnish a law library, informing him that contract-attorney services were available, and instructing him that he could contact a private attorney or his public defender. Filing 70-1 at 152.

Whittamore-Mantzios responded to Narcisse's second letter on March 4, 2019, telling Narcisse that if he wanted her legal assistance, he needed to contact his social worker who would give him a form to fill out. Filing 70-2 at 26. Once he filled out the form, DHHS would forward the request to her. Filing 70-2 at 26. She also emphasized that Narcisse should not contact her directly. Filing 70-2 at 26. Narcisse did not attempt further contact with Whittamore-Mantzios. Filing 70-1 at 37, 52.

Narcisse eventually obtained copies of the cases he wanted. Filing 70-1 at 50–51. At another hearing before the Mental Health Board to review whether Narcisse should remain in inpatient commitment, Egger represented Narcisse. Filing 70-1 at 119. The Mental Health Board concluded that he should remain in inpatient commitment. Filing 70-1 at 119.

On March 27, 2019, Narcisse filed this suit against several defendants. Filing 1. In a January 23, 2020 screening order, Senior Judge Richard G. Kopf determined that Narcisse had stated a viable claim for denial of his right of access to the courts against defendants Reynolds and

Propel in their individual capacities and Whittamore-Mantzios in her official and individual capacities. Filing 10 at 11–12. The Court granted Whittamore-Mantzios's Motion for Summary Judgment on November 19, 2021, and dismissed her from this case. Filing 85. On November 22, 2021, Reynolds and Propel filed a Motion for Summary Judgment. Filing 86.

### III. ANALYSIS

#### A. Standard of Review

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except* the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "an absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (citing *Celotex*, 477 U.S. at 323). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to

support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than 'the mere existence of *some* alleged factual dispute'" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

### B. Defendants are Entitled to Summary Judgment

Defendant's Motion for Summary Judgment argues that Narcisse lacks standing to bring his claim for denial of his right to access to the courts because he has not suffered an injury or, alternatively, that they are entitled to qualified immunity. Filing 87 at 9–17. Narcisse's access-to-the-courts claim against Defendants rests on how they responded to his complaints about NRC's law library. Thus, Narcisse must show that Propel telling him to go to "legal assistance" and Reynolds giving Narcisse's grievance to another NRC staffer for a response caused him injury by thwarting a meritorious claim and violating his clearly-established rights. He is unable to do so and, thus, Defendants are entitled to summary judgment.

"[P]risoners have a constitutional right of access to the courts."[2] *Bounds v. Smith*, 430 U.S. 817, 821 (1977), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996). But this is not "an abstract, freestanding right to a law library or legal assistance." *Lewis*, 518 U.S. at 351. "[A] prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008) (quoting *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007)). "To prove actual injury, [a prisoner] must 'demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded.'" *Id.* (quoting *White*, 494 F.3d at 680). Without an actual injury, the prisoner lacks standing to pursue an access-to-the-courts claim. *White*, 494 F.3d at 680 ("Because the actual injury requirement concerns the prisoner's standing to bring a claim, and thus our jurisdiction, and because we avoid unnecessarily deciding constitutional issues, we will first consider whether [the plaintiff] suffered any actual injury.").

Narcisse has not suffered an actual injury, and thus lacks standing to pursue his claim. Narcisse admits that he was represented at his hearing by Egger, a court-appointed attorney. Filing 70-1 at 119. Clearly, Narcisse was unhappy with Egger's performance, but the right of access to the courts does not concern "the effectiveness of the representation, but . . . the adequacy of the prisoner's access to his or her court-appointed counsel or other law-trained assistant." *Schrier v. Halford*, 60 F.3d 1309, 1313–14 (8th Cir. 1995). Here, Narcisse has not demonstrated that anything Propel or Reynolds did interfered with his access to Egger or inhibited Egger's ability to represent him. *Hartsfield v. Nichols*, 511 F.3d 826, 833 (8th Cir. 2008) ("Absent an articulation of how the

---

[2] Although the caselaw governing the right of access to the courts concerns prisoners, the Court applies this framework to the claim made by Narcisse, a civilly committed individual. *See Nicolaison v. Brown*, No. CV 05-1255 (RHK/JSM), 2005 WL 8163348, at *2 (D. Minn. Nov. 7, 2005) ("Civilly committed individuals, like prison inmates, have the right of access to the Courts.").

alleged wrongful conduct actually blocked [the plaintiff's] access to filing a complaint, or caused a filed complaint to be deficient, [the plaintiff's] alleged injuries are merely speculative."). Indeed, Narcisse admits he obtained copies of the cases he wanted to help his case in front of the Mental Health Board. Filing 70-1 at 50–51. Therefore, Narcisse has not shown that he suffered an actual injury and lacks standing to pursue his claim. *Hartsfield*, 511 F.3d at 831 ("To prove actual injury, [a prisoner] must 'demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded.'").

Even if Narcisse had demonstrated standing, Defendants would be entitled to qualified immunity. "Qualified immunity shields officials from civil liability in § 1983 actions when their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Courts engage in a two-step inquiry when a party asserts qualified immunity: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Id.* (quoting *Nord v. Walsh Cnty.*, 757 F.3d 734, 738 (8th Cir. 2014)). Both questions must be answered affirmatively to defeat a defense of qualified immunity. *Id.* "And, courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first.'" *Nord*, 757 F.3d at 738–39 (quoting *Pearson*, 555 U.S. at 236).

A right is clearly established if it is "sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (alteration in original) (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "[T]he longstanding principle" is that "'clearly established law' should

7

not be defined 'at a high level of generality.'" *Morgan*, 920 F.3d at 523 (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017)). Rather, "[T]he clearly established law must be 'particularized' to the facts of the case." *White*, 137 S. Ct. at 552 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "There need not be a case 'directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Morgan*, 920 F.3d at 524 (quoting *Ashcroft*, 563 U.S. at 741). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam) (internal quotation marks omitted)). The plaintiff has the burden of showing that the law is clearly established. *Id.*

Propel and Reynolds are entitled to qualified immunity. No reasonable official would believe that telling Narcisse to go to "legal assistance" in response to his complaints about NRC's law library or handing off his grievance to another staff member to review would violate Narcisse's constitutional rights. *See Merryfield v. Jordan*, 431 F. App'x 743, 749 (10th Cir. 2011) (holding that a civilly committed sex offender lacked any federal constitutional right to an adequate grievance procedure). Narcisse has provided no evidence or legal authority demonstrating that Propel or Reynolds violated his clearly established rights. Accordingly, because Narcisse lacks standing and, alternatively, Propel and Reynolds are entitled to qualified immunity, the Court grants Defendants' Motion for Summary Judgment.

## IV. CONCLUSION

The Court grants Defendants' Motion for Summary Judgment. Accordingly,

IT IS ORDERED:

1. Defendants' Motion for Summary Judgment, Filing 86, is granted;

2. Narcisse's Complaint, Filing 1, is dismissed in its entirety, and;

8

3. The Court will enter a separate judgment.

Dated this 16th day of March, 2022.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge
